# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| David Henry,<br>    Plaintiff,<br><br>v.<br><br>Government Employees Insurance Company,<br>    Defendant. | Civil Action No. 2:15-cv-3560-RMG<br><br>**ORDER AND OPINION** |

This matter is before the Court on Defendant Government Employees Insurance Company's ("GEICO") Motion for Summary Judgment and Plaintiff David Henry's Motion to Certify Questions. (Dkt. Nos. 40, 41.) For the reasons set forth below, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Motion to Certify Questions is denied.

## I. Relevant Facts

### A. The Accident

On September 3, 2011, Plaintiff David Henry was an employee of Aaron's, Inc. and a passenger in an Aaron's truck when the truck was rear-ended by a vehicle operated by Sam Knowlin, an underinsured motorist. (Dkt. No. 40-1 at 4.) Henry sustained injuries, and his medical bills totaled $10,617.71. (Dkt. No. 40-7 at 10.) Henry's physician gave him a note a little over a month after the accident allowing him to return to work without accommodations. (Dkt. Nos. 40-4 at 6, 40-5.) GEICO insured both the at-fault driver, Knowlin, and David Henry.

### B. The Insurance Policy

Prior to the accident, on May 14, 2011, GEICO had issued an insurance policy (the "Policy") to Jonnie Ruth Lawson of Aaron's, Inc., that provided liability, uninsured, and

underinsured motorist ("UIM") coverage. (Dkt. No. 40-2 at 2.) The UIM portion of the Policy states that GEICO "will pay damages for bodily injury and property damage caused by an accident which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle." (*Id.* at 5.) Under the Policy, GEICO maintains the right to participate in and to defend any UIM claim. (*Id.* at 6.) The coverage limit for UIM claims is $25,000 and includes a standard offset provision under which any amount the insured would be entitled to recover "from the owner or operator of an underinsured motor vehicle because of bodily injury or property damage caused by an accident" is reduced by any sums already recovered from several other sources, including workers' compensation and amounts recovered from claims against legally responsible persons. (*Id.* at 2, 6, 7.)

### C. Henry Recovers $50,395.61 Through his Workers' Compensation and Liability Claims and Proceeds to Seek UIM Benefits Under the Policy

On February 2, 2013, Henry's workers' compensation carrier paid him $25,395.61 in benefits. (Dkt. No. 40-7 at 5-8.) On September 16, 2013, Henry filed a lawsuit against Sam Knowlin, the at-fault driver. That action proceeded to mediation at which Henry executed a Covenant Not to Execute in exchange for receiving $25,000 on his liability claim. (Dkt. No. 40-6.) On December 10, 2014, after settling the liability portion of his claim against Knowlin, Henry served GEICO as the UIM carrier, seeking the $25,000 in UIM coverage. GEICO stepped in to defend the action.

### D. The Parties Cannot Agree on a Settlement and Proceed to Trial

The parties could not agree about whether Henry's damages were sufficient to reach the UIM coverage in part or in full. (Dkt. No. 40 at 2.) As explained above, GEICO was entitled to offset Henry's UIM recovery by the $50,395.61 he had already recovered through his workers' compensation and liability claims. A jury would therefore have had to find Henry's damages to

be in excess of $50,395.61 before GEICO would owe *any* money to Henry under the UIM policy. A jury would have had to find Henry's damages to be in excess of $75,395.61 before GEICO would owe Henry the full UIM coverage policy limit of $25,000.

GEICO did not expect that a jury would award Henry $75,395.61 because Henry's medical bills were only $10,617 and, although Henry claimed lost wages close to $20,000 for missing work from September 2011 to December 2012, Henry's physician had given him return-to-work authorization without any restrictions just one month after the accident. Finally, GEICO relied on the advice of its counsel Ed Lawson, who did not believe a jury would award Henry damages in excess of the sums he had already received that would offset his UIM recovery. (Dkt. No. 40-11 at 2-3.)

In the weeks leading up to trial, the parties exchanged settlement offers and counteroffers. On May 11, 2015, Henry offered $10,000 to settle, but he later reduced his demand to $5,000. (Dkt. No. 40-11 at 3-4.) GEICO offered to settle the case for $2,500, and Henry rejected that offer. (*Id.*) Unable to reach a settlement agreement, the parties went to trial on June 15, 2015 at the Georgetown County Court of Common Pleas. (Dkt. No. 40-1 at 8.) After two days of testimony, the jury awarded Henry damages of $250,000. (*Id.*) GEICO tendered the available $25,000 UIM policy limit to Henry. (Dkt. No. 40-7 at 12.)

### E. Henry Files this Lawsuit Against GEICO Alleging Bad Faith Refusal to Pay his UIM Benefits

On August 7, 2015, Henry sued GEICO in the Georgetown County Court of Common Pleas asserting a claim for bad faith. (Dkt. No. 1-1.) The case was removed to this Court in September 2015. (Dkt. No. 1.) Henry argues that GEICO acted in bad faith when it unreasonably refused to accept a compromise settlement. (Dkt. No. 1-1 at. 5.) Henry seeks

"actual damages for the additional costs of trial and for the verdict rendered" (i.e., the excess verdict) as well as punitive damages. (*Id.* at 6.)

GEICO has filed a motion for summary judgment on three grounds: (1) South Carolina has never recognized a cause of action on a UIM insurance carrier's failure to settle a UIM claim, and it would not do so here where the refusal to settle is based upon a valuation dispute; (2) even if South Carolina would recognize a cause of action for bad faith against a UIM carrier, the evidence in this case fails to create a material issue of fact; and (3) even if South Carolina would recognize a cause of action for bad faith against a UIM carrier, the amount of the jury's verdict cannot serve as a measure of damages in the bad faith action. (Dkt. No. 40 at 1.)

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment carries the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material

facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### B. Bad Faith

In South Carolina, if "an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Tadlock Painting Co. v. Maryland Cas. Co.*, 473 S.E.2d 52, 53 (S.C.1996) (quoting *Nichols v. State Farm Mut. Auto. Ins. Co.*, 306 S.E.2d 616 (S.C. 1983)). Bad faith can occur even without breach of any provision of an insurance contract. *Tadlock Painting*, 473 S.E.2d at 55 ("[T]he benefits due to an insured are not limited solely by those expressly set out in the contract."). For a bad faith claim to be successful, the plaintiff bears the burden of showing: (1) the existence of an insurance contract between the parties; (2) refusal by the insurer to pay benefits due under the contract; (3) that the refusal resulted from the insurer's bad faith or unreasonable action; and (4) that the refusal caused damage to the insured. *Howard v. State Farm Mut. Auto. Ins.* 450 S.E.2d 582, 586 (S.C. 1994).

### III. Discussion

Henry alleges that GEICO knowingly acted in bad faith when it refused to settle the UIM dispute and "fail[ed] reasonably to evaluate [his] claims or to resolve the claim." (Dkt. No. 1-1 at 5.) This Court disagrees. In 2008, District Court Judge Patrick Michael Duffy granted summary judgment for an insurance company after considering a very similar set of facts. *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453 (D.S.C. 2008). In *Snyder*, an underinsured motorist struck and injured a bicycle rider with his vehicle. *Id.* at 454, 460. After the insurer paid the liability insurance coverage limits, there was a dispute about whether the bike rider's

damages would reach the UIM coverage in light of offsets from sums recovered on other claims. *Id.* at 455. The parties went to trial, the jury awarded the plaintiff a substantial sum in damages, and the insurer tendered the UIM coverage to its limit. *Id.* at 455-56. The plaintiff subsequently sued the insurer for, among other claims, bad faith refusal to pay benefits.

Judge Duffy granted the insurer's motion for summary judgment, holding that although "South Carolina law most assuredly recognizes a cause of action for bad faith refusal to pay benefits to a first-party insured," bad faith is not necessarily shown by evidence that a carrier forced someone to go to court to receive benefits. *Id.* at 458-59. Judge Duffy found that the insurer did not act in bad faith because it had a reasonable ground for contesting the claim. *Id.* ("The law certainly does not require every insured with UIM coverage who has initiated an action against an at-fault driver to receive a settlement offer for some money. The reality is that some claims would be frivolous, and insurers must have the ability to protect their own interests.").

Like the court in *Snyder*, this Court must determine whether there is any genuine dispute of material fact about whether GEICO acted in bad faith or whether GEICO had a reasonable ground for contesting the valuation of Henry's injuries. Henry has offered no evidence beyond conclusory statements and inferences to support of his claim that GEICO's actions were in bad faith. The only evidence Plaintiff provides is his own trial Counsel's testimony that he believed the claim was worth more. Like the insurer in *Snyder*, the evidence shoes that GEICO based its estimation of Henry's damages on all the evidence available in the case, including Henry's $10,000 in medical bills, $20,000 in lost wages, and his doctor's giving him return-to-work authorization just a month after the accident. Medical damages and lost wages in this case fell way below the total offset. Based on these considerations, GEICO made a settlement offer of

$2,500. Henry's pre-trial settlement offer of $5,000 suggests that GEICO's offer was not unreasonable. *See Collins v. Auto-Owners Ins. Co.*, 438 F. App'x 247, 249 (4th Cir. 2011) ("[T]he fact that the parties had different estimations of the value of a claim is not, under South Carolina law, evidence of bad faith on the part of the party offering the lower amount.").

In *Snyder*, the court held that "if it was clear that the insured suffered damages 'greatly in excess' of the liability limits of the at-fault party, the insurer could not in bad faith delay or withhold benefits to which it was certain that the insured was entitled." *Snyder*, 586 F. Supp. 2d at 459 (citing *Myers v. State Farm Mut. Auto. Ins. Co.*, 950 F. Supp. 148, 151 (D.S.C. 1997)). If it were "clear" that the Henry had suffered damages "greatly in excess" of the $50,395.61 that he had already recovered (and for which GEICO was entitled to as an off-set), then there is no rational explanation as to why GEICO would have refused Henry's $5,000 settlement offer on the eve of trial. As in *Snyder*, the record shows that GEICO simply made a reasonable yet costly error in calculating the amount of damages a jury was likely to award Henry for his injuries.[1] That GEICO's prediction was wrong does not establish that it acted unreasonably or in bad faith. As Judge Duffy explained in *Snyder*, finding otherwise "would run the risk of turning every case in which an insurer and an insured were not able to reach a settlement and the insured went on to win a large verdict into a case for bad faith refusal to pay against the insurer." *Snyder*, 586 F. Supp. 2d at 461.

The insurance company prevailed on summary judgment in *Snyder* even though the plaintiff had the benefit of a more compelling set of facts. The plaintiff in *Snyder* was diagnosed

---

[1] The Court has relied on the damages that are not in dispute. The parties dispute the extent to which this accident impacted plaintiff's career prospects or caused other quantifiable damages. To support a bad faith claim, the damages would have to be "clear." Even considering the facts in a light most favorable to Henry, his allegations that he suffered damages beyond the $30,000 in medical bills and lost wages could not clearly establish that he suffered damages "greatly in excess" of $75,395.61, the amount needed to reach the upper end of the UIM coverage limit.

with a 10% disability, and his insurance company at no point proposed any settlement offer "which would not have forced Snyder to go through some sort of trial to get his UIM benefits." *Snyder*, 586 F. Supp. 2d at 455.[2] In this case, GEICO's settlement offer of $2,500 was not far from Henry's offer of $5,000, and it would have allowed both parties to avoid going to trial. Although Plaintiff contends that "no reasonable jury could award damages in amount less than the coverage," for all the reasons above, this Court disagrees. Clearly, reasonable minds have differed on the appropriate calculation of damages in this case, but the question before the Court is limited to whether GEICO acted in bad faith when it refused Plaintiff's settlement offer. Plaintiff has not alleged facts sufficient to create a genuine dispute of material fact about whether GEICO was certain Henry suffered damages that were greatly in excess of the UIM coverage limit and withheld those benefits in bad faith.

### IV. Plaintiff's Motion to Certify Questions

After GEICO filed its motion for summary judgment, Henry filed a motion to certify the following two questions to the South Carolina Supreme Court: (1) Does South Carolina Law recognize a cause of action for a UIM insurer's failure to settle a UIM claim; (2) If the answer to the first question is yes, what is the measure of damages and what are the types of damages recoverable in a bad faith action against a UIM carrier for failure to settle a UIM claim?

Rule 244 of the South Carolina Appellate Court Rules allows the South Carolina Supreme Court, in its discretion, to answer questions of law certified to it by any federal court when requested by the certifying court in cases involving "questions of law of this state which may be determinative of the cause then pending in the certifying court."

The question Plaintiff seeks to certify to the Supreme Court of South Carolina is not outcome determinative in this case. As explained above, GEICO is entitled to summary

---

[2] The insurance company in *Snyder* would only agree to set a minimum and maximum award for summary jury trial.

judgment because Henry has failed to allege facts which create a genuine dispute of material fact about whether GEICO acted in bad faith when it refused Henry's offer to settle the claim for $5,000.

## V.     Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. No. 40) is **GRANTED**. Plaintiff's Motion to Certify Questions (Dkt. No. 41) is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

August   2  , 2017
Charleston, South Carolina